**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Von Bruns & Conolly   }
                                   }
                                   }      Docket No. 73-5-03 Vtec
                                   }
                                   }

Decision and Order

Appellants Sharon L. Von Bruns and Barry H. Conolly appealed from a decision of the Planning Commission of the Town of Westford, granting final plat approval of an 8-lot Planned Residential Development (PRD) major subdivision[1] to Appellee-Applicant Craig McDonald.

Appellants appeared and represented themselves; Appellee-Applicant is represented by Daniel S. Triggs, Esq.; the Town of Westford participated through its Planning Coordinator. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, and the parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellee-Applicant owns approximately 40.65 acres of land on the north side of Plains Road and approximately 29.35 acres on the south side of Plains Road. Appellee-Applicant proposes to create a Planned Residential Development (PRD) in the Rural Residential zoning district on the 29.35-acre parcel to the south of Plains Road. Appellants= property adjoins that parcel to its south, but is located in an Agricultural, Forestry and Residential zoning district. Plains Road is a through road that serves other parcels of land; it connects with Route 104 via Toof Road or Learned Drive to the east of the proposed PRD and makes a loop to connect with Route 104 to the west of the proposed PRD as well.

The earliest revisions to the Westford Zoning and Subdivision Regulations that relate to this proposal were adopted in March of 1999. A change to 24 V.S.A. ' 4443(d) effective July 1, 2001 made a newly-proposed zoning amendment applicable to any application filed within the first 150 days after it had been noticed for public hearing. Appellee-Applicant applied for sketch plan approval of the proposed PRD on September 19, 2001. The 1999 regulations were applied to that application, including ' 7.7.2 applicable to individual septic systems. No party appealed sketch plan approval; therefore, even if sketch plan approval should not have been granted under the 1999 regulations, under 24 V.S.A. ' 4472(d), it cannot now be challenged, directly or indirectly, in the present appeal.

The 2002 regulations were warned for hearing on November 20, 2001, and were adopted on March 5, 2002. They deleted from ' 7.7 of the Subdivision Regulations the former ' 7.7.2 regarding individual on-site septic systems, and renumbered the former ' 7.7.3 as ' 7.7.2. Appellee-Applicant applied for preliminary plat approval of the proposed PRD on April 8, 2002. That application was approved in July of 2002. No party appealed preliminary plat approval. Under 24 V.S.A. ' 4472(d), it cannot now be challenged, directly or indirectly, in the present appeal.

The 2003 regulations were warned for hearing on November 29, 2002. They added a new amended ' 7.7.2 regarding individual septic systems, addressing on-site systems, off-lot systems on common land held by an association including the lot owner, and off-site systems. Appellee-Applicant applied for final plat approval of the proposed PRD on January 20, 2003. The 2003 regulations were adopted on March 4, 2003. Final plat approval of the proposed PRD was

granted on April 6, 2003 and has been appealed to this Court in this appeal. Unless otherwise specifically mentioned, all references in this decision are to the 2003 regulations, which are the version of the regulations applicable to this application.

Completeness of application

The parties raise several questions regarding the completeness of the application, in particular as to whether the proposed site plan and application materials show all of Appellee-Applicant= s land required to be shown by the listed sections of the Subdivision Regulations.

Appellee-Applicant is entitled to propose to develop only a portion of his land, and may present a plan for development of the 29.35-acre parcel on the south side of Plains Road without also proposing to develop his land on the north side of Plains Road. In connection with sketch plan review of the development proposal for the 29.35-acre parcel, ' 2.1.3 of the Subdivision Regulations specifically required Appellee-Applicant to provide the boundaries and area of all contiguous land he owns, even if it is separated by a public right-of-way, as it is in this case. This was not provided, but sketch plan approval was not appealed and cannot now be challenged.

On the other hand, for preliminary plat approval (' 5.1.1(2)), incorporated as an independent requirement for final plat approval by ' 5.2.1(first sentence), only the name and address of the owner of the subdivision property and of contiguous land is required, not the contiguous property= s boundaries or area (although those are required in the vicinity map discussed below). With regard to this requirement, Appellee-Applicant= s failure to provide this information at the sketch plan stage of subdivision approval does not invalidate sketch plan approval, as it was not appealed. Because this particular information is not required for preliminary or final approval to be granted, its lack is not a bar to consideration of the application for final plat approval before the Court in this appeal.

By contrast to ' 5.1.1(2), even if Appellee-Applicant has no present plans for development of his holdings on the north side of Plains Road, ' 5.1.1(6) requires that, if the preliminary plat covers only part of the subdivider= s entire [that is, contiguous] holding, the site development plan must give an A indication of the future probable lot lines and building envelopes of the remaining portion of the tract.@ Because it was a requirement for preliminary plat approval (' 5.1.1(6)), it is incorporated as an independent requirement for final plat approval by ' 5.2.1(first sentence). This information continues to be required in order for approval to be granted at the final plat approval stage that is before the Court de novo[3] in this appeal. However, if Appellee-Applicant has no present plans for the subdivision of the land on the north side of Plains Road, it appears from the regulations that this section could be satisfied by a statement to that effect.

Section 5.1.1(7) requires a separate site resource map to be provided for the parcel, at the same scale as the site development plan. This site resource map is only required to cover A the entire parcel within which the subdivision is proposed,@ which in the present case is the 29.35-acre parcel. However, it must show all the listed resources, including wetlands, primary agricultural soils, managed woodland, wildlife habitat and greenways, and how those resources will be protected. All that was provided was the present edge of the trees, not the proposed A managed woodland@ (on the development plan), and a written forest management plan[2] that addresses the management of the forested areas on the common land to preserve its deeryard function, but does not address the management of the forested areas on Lots 6 or 7.

Because it was a requirement for preliminary plat approval (' 5.1.1(7)), it is incorporated as an independent requirement for final plat approval by ' 5.2.1(first sentence). If it had been provided, it might have been possible for the Planning Commission, or this Court on appeal, to evaluate under ' ' 7.9.5(1), 7.9.5(3) and 7.9.6 whether the listed resources are adequately protected, and whether forest management or other development restrictions are required to protect any portion

of the band of woodlands shown along the southerly and westerly boundaries of the project parcel on the open space land and on Lots 6 and 7. This information continues to be required in order for approval to be granted at the final plat approval stage that is before the Court de novo in this appeal. As the site resource map and all the information required by ' 5.1.1(7) was not provided in evidence, that information must be provided on remand before the final plat for the 29.35-acre parcel can be approved.

The requirement in ' 5.1.1(4) that Appellee-Applicant provide the acreage and names of adjacent lot owners does not appear to require the adjacent owners= property to be mapped, but merely that those owners be named, together with information on the acreage of each of those adjacent lots. This section could have been satisfied with a copy of the Town= s tax map for the area, with the required acreage information noted on it. Because it was a requirement for preliminary plat approval (' 5.1.1(4)), it is incorporated as an independent requirement for final plat approval by ' 5.2.1(first sentence). The owners= names for the adjacent parcels are provided, but the acreage is not shown on or accompanying any of the plans in evidence. This information continues to be required in order for approval to be granted at the final plat approval stage that is before the Court de novo[4] in this appeal. That information must be provided on remand before the final plat for the 29.35-acre parcel can be approved.

Similarly ' 5.1.2(1) requires a vicinity map, at a scale of not more than 400 feet to the inch (that is, less detailed than the site plan), showing all existing subdivisions and approximate parcel boundaries of all adjacent parcels, including those across the road from the 29.35-acre parcel. This map has not been provided; the so-called vicinity map on the corner of the site plan serves only to orient the reader as to the location of the development property. Because it was a requirement for preliminary plat approval in ' 5.1, it is incorporated as an independent requirement for final plat approval by ' 5.2.1(first sentence). This information continues to be required in order for approval to be granted at the final plat approval stage that is before the Court de novo[5] in this appeal, and must be provided on remand on a separate plan or map at the requisite scale, before the final plat for the 29.35-acre parcel can be approved.

Percolation test results for Lot 8

Under ' 7.7.3 of the Subdivision Regulations, percolation tests and test holes may be required by the Planning Commission. Nothing in that section obligates the Planning Commission to require such tests at all, or to require them on all the lots; that section only requires that if they are done, they are to be done in accordance with the latest state standards. The septic system serving Lot 8 is proposed to be located on the common land, and percolation tests were done for the system= s location on the common land. Appellants argue that tests should also have been done and results provided on Lot 8 itself. If Appellee-Applicant did have those tests done on Lot 8, the results must have suggested that there was not enough suitable land on Lot 8 for it to have an on-site septic system. Appellants could have requested any such results in discovery for this appeal. However, as nothing in ' 7.7.2 or ' 7.7.3 requires the testing to be done at all, or to be done or reported for a lot on which no septic system will be placed, Appellee-Applicant= s failure to test Lot 8 does not preclude the approval of the final plat.

Submittal to Conservation Committee

Section 4.11 of the Subdivision Regulations requires the Planning Coordinator to A submit a copy of the preliminary plat to the [Town= s] Conservation Committee, if there is such a committee designated by the Board of Selectmen, for review and comment before or at the public hearing on the Preliminary Plat.@ Appellants argue that this was not done, and should preclude approval of the final plat. However, the regulations only make this step a prerequisite for the preliminary plat. Regardless of whether this could have invalidated approval of the preliminary plat, preliminary plat approval was granted in 2002 and was not appealed. Under 24 V.S.A. ' 4472(d), it cannot

now be challenged, directly or indirectly, in the present appeal, and therefore cannot preclude the approval of the final plat.

Ability to analyze PRD for compliance with regulations, absent that information

Appellants argue that, without information about the property to the north of Plains Road; without information on the boundaries and acreage of adjacent properties; without percolation tests on Lot 8; without the site resource map; and without prior review by the Conservation Committee, it is not possible for the Planning Commission (or this Court on appeal), to determine if the proposed PRD subdivision complies with the regulations. In particular, Appellants argue that it is not possible to determine if the proposal A adheres to the planning standards of the subdivision regulations, such as 6.1.5 (compliance with Town objectives and bylaws), 6.1.6 (compatibility with surrounding properties), 6.2.1 and 6.2.2 (protection of significant natural resources); and to the required improvements and design standards such as 7.9.5 (lot size and density) and 7.9.6 (lot layout that preserves contiguous open space areas and natural resources).

Of the missing elements, the only one required for the Planning Commission (or this Court on appeal) to determine if the proposal meets those standards is the site resource map and its associated information. With that map, it would be possible to determine whether or not the strip of woods along the westerly and southerly boundary is a wildlife corridor or otherwise needed for wildlife, and to determine whether easements or restrictions on the cutting of some portion of that strip of woodland is necessary for the purpose of protecting the listed natural resources or open space areas. This is a separate requirement from determining whether any of that woodland should be preserved for the purpose of providing adequate screening for adjacent properties under ' 4.4.4(3) of the Zoning Regulations, discussed below.

Primary agricultural soils

Appellants argue that, while the decision recognized that primary agricultural soils cover nearly all of the 29.35-acre parcel, most of that parcel is comprised of A good agricultural potential@ soils and only about an acre is classified as A high agricultural potential@ soils. Appellants claim that the area classified as A high@ will be impaired for agricultural use by having the private subdivision road and the off-site piping for the Lot 7 and Lot 8 septic systems pass through it.

The Zoning Regulations applicable to PRDs in the Rural Residential require that A all buildings, building envelopes, roads, sewage disposal sites, and sewer and water lines will be located so as to retain the following significant natural resources for their productive agricultural or forestry use: primary agricultural soils . . . .@ ' 4.5.4(1). However, nothing in the regulations makes a regulatory distinction among the different U.S. Soil Conservation Service[6] subclassifications of primary agricultural soils. That is, the definition in section 10 of the Subdivision Regulations simply defines the term A primary agricultural soils@ to mean A soils (Class I through VII) classified by the U.S. Soil Conservation Service as having high or good potential for agriculture.@ (A map of the location of these soils is apparently provided within the Town Plan; however, that document was not offered into evidence.)

While neither party presented evidence of the different subclassifications to which Appellants allude in their memorandum, because none of the subclassifications has a regulatory effect in either the Zoning or Subdivision Regulations, the Planning Commission properly examined only the extent to which the proposed PRD protected any type of primary agricultural soils as compared with its protection or lack of protection in a conventional subdivision.

Landscaping and screening adjacent properties

Appellants claim that the Planning Commission= s waiver of certain lot size, density, frontage, lot shape and road length regulations resulted[7] in some of the project lots adjoining Appellants= property line. In any event, Appellants argue that the PRD proposal makes insufficient provision for > screening and fencing= to protect adjacent property owners. We note that no regulatory provision requires new fencing (although ' 4.4.4(3) of the Zoning Regulations discusses the preservation of existing fences), and therefore only examine the requirements for landscaping and screening.

Unlike conventional subdivision lots which only have a 25-foot rear-yard setback in the Rural Residential zoning district, ' 4.5.3(10) of the Zoning Regulations requires a 50-foot setback along the perimeter of PRD and ' 4.5.6(2) similarly requires a 50-foot side or rear setback at the periphery of the PRD. Those setbacks are protected from building, but there is no requirement for the preservation of existing trees or other screening vegetation within that setback. The standards for site plan approval, which are made applicable to PRDs by ' 4.5.2(1), also require that additional landscaping may be required in rear yards if those yards abut residential properties. ' 4.4.4(3)(b).

As the present PRD is proposed, without any protection for the maintenance of trees and shrubs or prevention of cutting within the 50-foot southerly perimeter setback of the proposed subdivision, is not possible to make a positive finding from the evidence that the proposed subdivision meets ' 4.4.4(3) of the site plan standards in the Zoning Regulations. Because this matter will have to be remanded to the Planning Commission in any event, on remand the Planning Commission will have the opportunity to make the determination in the first instance as to whether any easements or restrictions on the cutting of some portion of the 50-foot southerly perimeter setback is necessary for the purpose of providing adequate screening for adjacent properties.

Appellants also refer to the fact that the Planning Commission allowed iron pins rather than concrete post monumentation for the interior lot corners. We note that this waiver affects only the interior lot corners, and not any lot corners adjoining Appellants= property, so that even if the interior corners are less conspicuous, that fact should not in any way affect Appellants= ability to protect their boundary.

In addition, Appellants note that their property is in an Agricultural, Forestry and Residential zoning district, while the PRD subdivision property is in the less restricted Rural Residential zoning district. Appellants argue that > special consideration to landscaping and screening= should be given to this boundary due to the difference in zoning designations. However, neither the Zoning Regulations nor the Subdivision Regulations impose any special requirements at district boundaries. Appellants may wish to pursue amendments to the Regulations if they feel that the Regulations are insufficient to carry out the regulatory purposes of the zoning districts; however, the Court is restricted to applying the Regulations as they are written.

Timing of Boundary Adjustment

Appellants claim that a portion of the proposed PRD property adjoining their boundary had previously been a part of a separate Slayton property, which was separate from and adjacent to the rest of the parcel now proposed for the PRD and was already developed with an existing dwelling. A portion of this property was transferred to McDonald by a separate boundary adjustment, after the transfer of the bulk of the PRD property from Slayton to McDonald and after the application for and hearing on Sketch Plan Review for the PRD subdivision. The timing of that transfer, with reference to the approval of the PRD subdivision, was that the transfer of the bulk of the PRD property from Slayton to McDonald occurred[8] on September 24, 2001; the hearing of the Sketch Plan Review of the PRD took place on October 10, 2001; and the Boundary Adjustment was approved (or was filed in the Town= s land records) on December 12, 2001.

Pursuant to the definition of Boundary Adjustment in ' 10 of the Subdivision Regulations, an adjustment of boundary lines between adjacent lots is not deemed a subdivision if the Planning Commission makes certain findings. However, boundary adjustments have to be approved by the Planning Commission under that definition and ' 5.3. No party appealed the Planning Commission= s approval of the boundary adjustment, and it became final.

If the configuration of the PRD subdivision property changed between the Sketch Plan and Preliminary Plat approval stages, and if Appellants wished to claim that the boundary adjustment change should have sent the application back to the Sketch Plan approval stage, they could have raised that issue at the Preliminary Plat approval hearing and could have appealed the Planning Commission= s Preliminary Plat decision. As preliminary plat approval was not appealed, under 24 V.S.A. ' 4472(d), it cannot now be challenged, directly or indirectly, in the present appeal, and therefore cannot preclude the approval of the final plat.

Off-lot septic systems and proposed deed language

Under ' 7.7.2 of the Subdivision Regulations, off-lot septic systems are allowed to be placed on common land if the group of landowners owning the common land include the owner of the lot served by the off-lot system. That individual landowner remains responsible for the system, even though it is located on the common land. Section 7.7.2 also requires that copies of proposed deeds, agreements or other documents establishing the owner= s responsibilities for maintenance, upkeep and replacement be included with the application.

Thus, in the present case, the existence of off-lot septic systems to serve Lot 8 and Lot 7 does not preclude approval of the proposed PRD. However, although draft legal documents dated in May of 2002 (including a declaration of covenants, easements and restrictions) apparently had been submitted to the Planning Commission with the preliminary plat application (as they are referred to in both decisions), no such documents or current revisions of those documents were submitted to the Court with the final plat approval application. As of the final plat hearing from which the present appeal was taken, Appellee-Applicant had not submitted the proposed deeds, agreements or other documents that would allow the Planning Commission, and hence this Court, to approve the off-lot systems. Instead of postponing action on the final plat until the required documents had been provided, the Planning Commission approved the subdivision subject to a condition that, before > recording the final plat mylar,= Applicant must submit the A revised legal language (e.g., deed, covenants, bylaws) that clarifies that the owners of lot 7 and 8 are responsible for the maintenance and/or replacement of their septic system on the common land.@ However, this condition is inadequate to meet the requirements of ' 7.7.2 of the Subdivision Regulations, because it does not allow for the Planning Commission= s (or this Court= s) review of the adequacy of those documents[9] under that section.

Number of lots and allowable housing units

Appellants argue that what is proposed is really an 11-lot subdivision, counting the eight proposed lots, the common land, the land under the proposed private subdivision road, and Appellee-Applicant= s property on the north side of Plains Road all as separate lots. The proposed subdivision is not an 11-lot subdivision, but it is at least a nine-lot rather than an eight-lot subdivision. First, Appellee-Applicant= s property on the north side of Plains Road and on the south side of Plains Road are functionally separated by the road and are considered to be two existing lots for the purposes of analyzing any future subdivision[10] proposals. Therefore, we analyze only the divisions being proposed for the 29.35-acre parcel.

The 29-35-acre parcel is being divided into eight building lots and the remaining common land, eventually to be held and managed by a homeowners= association. Some of the land to be held in common is that land lying under the proposed private road and cul-de-sac to serve the eight

building lots. That private road is shown on the project plans with a lot line separating it from the remaining 18.24-acre A common land@ lot. If all the acreage in the 18.24-acre A common land@ lot and the acreage in the eight building lots is deducted from the total acreage of the 29.35-acre parcel, it results in a calculation of 1.06 acres of land lying under the proposed private road and cul-de-sac. If the open common land and the common land lying under the private road and cul-de-sac are treated as a single lot, then what is proposed is a nine-lot subdivision, with eight building lots and one commonly-held lot. If the open common land and the common land lying under the private road and cul-de-sac are treated as two separate lots, then what is proposed is a ten-lot subdivision, with eight building lots and two commonly-held lots.

Section 4.5.3(5) of the Zoning Regulations governing PRDs requires that the A total number of allowable <u>units</u> shall not exceed the number which could be permitted@ if the land were conventionally subdivided into lots. (Emphasis added.) The number which could be conventionally permitted on a 29.35-acre parcel under three-acre zoning would be nine building lots (not the ten lots cited in the A density information@ shown on the plans, as we find no authorization in the regulations to > round up= to the next whole acre). The number stated on the plan as that which could be conventionally permitted on a 29.35-acre parcel under a A conventional density plan@ would be eight building lots. As the proposed PRD proposes eight building lots (eight housing units), it meets ' 4.5.3(5) of the Zoning Regulations.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that final plat approval is denied, without prejudice. This matter is remanded to the Planning Commission to allow Appellee-Applicant to supplement the application for final plat approval to remedy the deficiencies discussed in this decision, and to allow the Planning Commission to hold such additional public hearing or hearings and make any new decision it may feel to be warranted by the supplemented application. On remand the Planning Commission should be clear as to whether it is ruling on final plat approval of this subdivision, or on site plan and zoning approval of this PRD, or both, as it is allowed to do under ' 4.10 of the Subdivision Regulations. In any event, any appeal taken from such new decision would be a new appeal that would require a new filing fee[11] and would receive a new docket number.

Dated at Barre, Vermont, this 29th day of March, 2004.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1.]     Under the Westford regulations, a PRD must obtain site plan approval and it must also obtain subdivision approval if it involves the sale of lots. Under §4.10 of the Subdivision Regulations, the Planning Commission may combine the required review under both the Zoning and Subdivision Regulations; we assume that was done in the present case, although it is unclear from the Notice of Decision, which is described as "approval of a final plat for a PRD major subdivision."

2.   We note that this was admitted as Exhibit J, but that Attorney Trigg retained it at the close of the trial (as it was the sole copy) and did not provide a copy to the Court with his post-trial memorandum. In the event that this decision is appealed by any party, we request that it be furnished, as it is part of the record of this proceeding.

3.   Appellee-Applicant could have, but did not, provide the required information in evidence before the Court in this proceeding.

4.   Appellee-Applicant could have, but did not, provide the required information in evidence before the Court in this proceeding.

5.   Appellee-Applicant could have, but did not, provide the required information in evidence before the Court in this proceeding.

6.   The former 'Soil Conservation Service' is now the 'Natural Resources Conservation Service' (still within the U.S. Department of Agriculture).

7.   It is unclear how those waivers alone could have had that result, in that a conventional subdivision on the property could have been designed that also would have resulted in the potential for at least three dwellings near Appellants' lot line.

8.   Appellants did not present these dates in evidence and we do not rely on them on the merits of this decision. The dates are referred to in this discussion simply to explain why this issue could only have been raised either at the preliminary plat approval, which was not appealed, or by appealing the Planning Commission's approval of the boundary adjustment, which also was not appealed.

9.   Appellee-Applicant could have, but did not, provide the required documents in evidence before the Court in this proceeding.

10.   The analysis of the number of lots for Act 250 purposes is not affected by the number of lots in the subdivision for the purposes of municipal regulation. That is, the municipal regulations can neither create Act 250 jurisdiction where it does not exist, nor eliminate it if it does exist.

11.   If Appellants again appeal, they may at that time apply to the court for a reduction in or waiver of the filing fee for such new appeal, and should cite the docket number of the present appeal in any such request.